UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　PLAINTIFF,　　　　　　　　　　　)　　　CASE NO. 2:20-CR-18
　　　　　　　　　　　　　　　　　　)
　　　　　　vs.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
DEWAYNE FOSTER,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　DEFENDANT.　　　　　　　　　　　)
_____)

TRANSCRIPT OF PLEA PROCEEDINGS
VIA VIDEO CONFERENCE
BEFORE THE HONORABLE NORAH MCCANN KING
UNITED STATES DISTRICT MAGISTRATE JUDGE
FEBRUARY 3, 2021; 3:30 P.M.
COLUMBUS, OHIO


APPEARANCES:

FOR THE PLAINTIFF:
　　　　VIPAL J. PATEL
　　　　Acting United States Attorney
　　　　By:　TIMOTHY LANDRY
　　　　Assistant United States Attorney
　　　　303 Marconi Boulevard
　　　　Columbus, Ohio　43215

FOR THE DEFENDANT:
　　　　Kevin Durkin, Attorney at Law
　　　　By:　KEVIN P. DURKIN, ESQ.
　　　　50 West Broad Street
　　　　Columbus, Ohio　43215




- - -


　　　　Proceedings recorded by mechanical stenography,
transcript produced by computer.

2

1          WEDNESDAY AFTERNOON SESSION

2          FEBRUARY 3, 2021

3              – – –

4          THE DEPUTY CLERK:  The Honorable Norah McCann King,

5    Magistrate Judge, for the Southern District of Ohio.  This is a

6    change of plea hearing, Case No. 2:20-CR-18, the United States

7    of America versus Dewayne Foster.  Today's date is February the

8    3rd, 2021.

9          THE COURT:  Thank you.  And for the record, I'm

10   pleased to recognize Mr. Timothy Landry who is participating on

11   behalf of the United States.  And we have on the telephone line

12   Mr. Kevin Durkin who is counsel for the defendant Dewayne

13   Foster.

14        And I gather, Mr. Durkin, you're having some technical

15   problems that prevent you from using a camera connection as

16   well?

17        MR. DURKIN:  Your Honor, I'm hoping that that will get

18   resolved as we speak.  But I can see all the parties -- well, I

19   could.  Wait a minute here.

20        THE COURT:  There we go.  We can see you now.

21        MR. DURKIN:  Great.

22        THE COURT:  Now we can.

23        And you are Dewayne Foster; is that correct?

24        THE DEFENDANT:  Correct.

25        THE COURT:  Well, Mr. Foster, as is apparent, we're

1    participating so far by video conference with more or less

2    success.  But I want to make sure you understand that you have

3    a right to participate in person in the courtroom.

4          I think we're -- I'm having some difficulty seeing.

5          MR. DURKIN:  I'm seeing like six images.

6          THE COURT:  Yes.  I don't know what has happened here.

7          Are other people having a strange screen?

8          MR. LANDRY:  Yes.  It says at the bottom Kevin Durkin

9    is presenting.

10         Mr. Durkin, I think there is a button that allows you to

11   share your screen.  Did you hit something?

12         MR. DURKIN:  It is quite possible.  Let me go back.

13         Did that help?

14         THE COURT:  Mr. Harris, would it be possible or best

15   for all of us to back out of this GoToMeeting and come back on

16   and start afresh?

17         I don't know -- Mr. Foster, are you able to set up the

18   laptop?

19         THE DEFENDANT:  No.  No.

20         THE DEPUTY CLERK:  I can try this.  I can take Kevin

21   Durkin off and see if that helps, and then he'll have to call

22   back in.

23         MR. DURKIN:  It can only help.

24         THE COURT:  Okay.  Thank you.

25         THE DEPUTY CLERK:  That's what I will try.

4

1          MR. DURKIN:  Did that fix the screen, Judge?

2          THE COURT:  No.

3          MR. DURKIN:  I have completely backed out of the

4    meeting except for audio.

5          THE COURT:  I think we're going to have to terminate

6    this hearing and start over.  And I don't know how -- have we

7    got a deputy marshal listening in?

8          DEPUTY MARSHAL:  Yes, ma'am.

9          THE COURT:  If we have everyone close down this

10   meeting and start over, will Mr. Foster be able to close down

11   and then reconnect to GoToMeeting?

12         DEPUTY MARSHAL:  I can have a deputy come down there,

13   or a CO come down and reconnect him.

14         THE COURT:  I think that's probably the best way to do

15   it at this point.  I think all of the rest of us are flummoxed

16   as to how to correct the screen.  So, if you wouldn't mind

17   making those arrangements down at Jackson Pike, and then I'll

18   ask everyone else to leave the meeting and we'll start over.

19         MR. DURKIN:  All right, Your Honor.  I apologize if

20   I'm the one responsible for this.  I'm not even smart enough to

21   know if I did it wrong.  I apologize in any case, and I'll get

22   off now.

23         THE COURT:  All right.  Thank you.  And I'm going to

24   leave the meeting as well.

25         (Recess taken from 3:42 p.m. to 3:44 p.m.)

1      THE COURT:  Mr. Harris, can I ask you to call the case

2  again, please?  We'll start over.

3      THE DEPUTY CLERK:  The Honorable Norah McCann King,

4  Magistrate Judge, for the Southern District of Ohio.  This is a

5  change of plea hearing, Case No. 2:20-CR-18, the United States

6  of America verses Dewayne Foster.  Today's date is February the

7  3rd, 2021.

8      THE COURT:  Thank you.

9      So just to make this record clear and complete, I'm

10  pleased to recognize Mr. Timothy Landry who is participating on

11  behalf of the United States, and Mr. Kevin Durkin who is

12  participating on behalf of Mr. Foster who is also available to

13  us by video conference.

14      Mr. Foster, I wanted to make sure that you knew that you

15  had a right to participate in this hearing in person and in the

16  courtroom with your attorney.  But if after you've had a chance

17  to discuss the matter with your attorney, you decide that it's

18  better to go forward by video conference, that's what we'll do.

19      Now, have you discussed this issue with Mr. Durkin?

20      THE DEFENDANT:  Yes, Judge.

21      THE COURT:  Okay.  And the file does reflect your

22  consent to conduct this hearing by video conference.  Are you

23  agreeable with going forward by video conference?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Okay.

6

1          Mr. Durkin, you did confer with Mr. Foster in making

2    that decision?

3          MR. DURKIN:  I did, Your Honor.  With the Court's

4    assistance, we spoke after the last hearing was continued for

5    about an hour.

6          THE COURT:  Okay.  Well, thanks.

7          So, Mr. Foster, we will go forward by video conference.

8    If at any time you can't see or hear any of the participants,

9    raise your hand.  You'll get my attention, and we'll do our

10   best to solve the problem.  And if at any time you want to

11   speak privately to Mr. Durkin, again, get my attention and

12   we'll make arrangements for you to speak privately with

13   Mr. Durkin.  Okay?

14         THE DEFENDANT:  Okay.

15         THE COURT:  Well, it is -- well, before we get to the

16   actual change of plea proceeding, Mr. Landry, have all victims

17   been notified of this hearing?  And are you aware of the

18   request of any victims to participate or to observe this

19   hearing?

20         MR. LANDRY:  Your Honor, no victims are participating

21   or have asked to participate today.

22         THE COURT:  All right.  But so far as you know, have

23   they been notified?

24         MR. LANDRY:  Yes.  Yes.  My office is on that.

25         THE COURT:  All right.  Thank you.

7

1          Mr. Foster, it's anticipated that you're going to plead

2     not guilty to Count 2 of the indictment pursuant to a plea

3     agreement.

4          Now, as I'm sure you know, this case is assigned to

5     Judge Graham, and it is only Judge Graham who can make a final

6     decision in this case, including deciding whether or not to

7     accept your guilty plea pursuant to this plea agreement.  But,

8     if you want to proceed in front of me on a guilty plea, we can

9     do that.  But I can only make a recommendation to Judge Graham.

10    I cannot make a final decision.

11         Now, have you discussed this issue with Mr. Durkin?

12           THE DEFENDANT:  Yes.

13           THE COURT:  And I do note, again, that the file

14    reflects your agreement to plead guilty before a magistrate

15    judge.  Are you agreeable to going forward in front of me here

16    today knowing that the most I can do is make a recommendation?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Okay.  Well, we will go forward, and I

19    expect to make a recommendation to Judge Graham yet today.

20         Now, before any judge can accept a guilty plea, the

21    judge has to be satisfied that the plea is made knowingly and

22    voluntarily and with a full understanding of the consequences

23    of that plea.  In order to make that determination for myself

24    and to allow Judge Graham to make his own determination in that

25    regard, I'm going to be asking you a number of questions.  And

1   you're going to be placed under oath.  That means that your

2   answers to my questions will be made under penalty of perjury.

3          And should you intentionally make a false statement in

4   response to my questions, you could be charged with another

5   criminal offense such as perjury or making false statements.

6   Do you understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  I'm going to ask you to raise your

9   right hand, and I'll ask our courtroom deputy to administer the

10  oath.

11         (Defendant sworn.)

12         THE DEFENDANT:  Yes.

13         THE COURT:  How old are you, Mr. Foster?

14         THE DEFENDANT:  Thirty-eight.

15         THE COURT:  And where were you born?

16         THE DEFENDANT:  What did you say, ma'am?

17         THE COURT:  Where were you born?

18         THE DEFENDANT:  Lima, Ohio.

19         THE COURT:  And I should have asked you first:  What's

20  your full name?

21         THE DEFENDANT:  Dewayne Minard Foster.

22         THE COURT:  And how much education do you have?

23         THE DEFENDANT:  I completed the 12th grade and some

24  college.

25         THE COURT:  Okay.  Have you ever been treated for a

9

1   mental illness or an addiction of any kind?

2        THE DEFENDANT: No.

3        THE COURT: Do you have any medical condition, whether

4   it's physical or mental, that requires treatment?

5        THE DEFENDANT: No.

6        THE COURT: Within the past 24 hours, have you taken

7   any drugs, pills, narcotics, or alcohol?

8        THE DEFENDANT: No.

9        THE COURT: All right.

10     Mr. Durkin, do you have any doubt as to Mr. Foster's

11  competence to enter a plea at this time?

12       MR. DURKIN: I don't, Your Honor.

13       THE COURT: Okay. Well, Mr. Foster, as you know, the

14  indictment charges you with six counts of making false

15  representation of a Social Security number. And each count

16  refers to events that are alleged to have occurred on separate

17  dates in 2018 and 2019. And it is alleged that each of these

18  offenses violated Title 42 of the United States Code Section

19  408.

20     Now, do you understand the nature and meaning of those

21  charges?

22       THE DEFENDANT: Yes.

23       THE COURT: Have you told Mr. Durkin everything you

24  know about this case?

25       THE DEFENDANT: Yes.

10

1          THE COURT:  Do you believe that Mr. Durkin knows all

2     the facts and circumstances on which these charges are based?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Has Mr. Durkin fully advised you as to the

5     nature and meaning of these charges and any defense that you

6     might have to these charges?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are you satisfied with Mr. Durkin's advice

9     and representation?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, it's anticipated that you will plead

12     guilty to Count 2 of the indictment.  Every criminal offense

13     has certain basic facts or essential elements that the

14     government would be required to prove beyond a reasonable doubt

15     before a person could be convicted on that charge at trial.

16          Now, in this case, as it relates to Count 2, the

17     government would have to prove these facts beyond a reasonable

18     doubt.

19          First, the government would have to prove that you made

20     a false representation of a Social Security account number.

21     And the government would have to prove that you did this with

22     the intent to deceive.

23          Third, the government would have to establish that this

24     action was taken by you with this intent for any purpose.  The

25     government would also have to establish that this offense

11

1  occurred, at least in part, in the Southern District of Ohio on

2  or about the date alleged in the indictment.  And as to Count

3  2, the indictment refers to the day of January 25, 2019.

4      Now, do you understand that that's what the government

5  would have to prove beyond a reasonable doubt before you could

6  be convicted on Count 2 at trial?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, if Judge Graham accepts your guilty

9  plea pursuant to this plea agreement, he will impose the

10  sentence that you and the government agreed to in the plea

11  agreement, and that is a term of imprisonment ranging from 33

12  to 41 months, a term of supervised release if at all as

13  determined by Judge Graham, a fine if at all as determined by

14  Judge Graham, a one hundred dollar special assessment; and that

15  would be with the understanding that the sentence imposed by

16  Judge Graham in this case could be imposed either concurrently

17  or consecutively to a state court sentence that -- I'm not sure

18  what the status of that state court sentence is, but apparently

19  there is a state court sentence ongoing.

20      So I want to emphasize, if Judge Graham accepts your

21  guilty plea pursuant to this plea agreement, he will impose a

22  sentence that is consistent with what you've agreed to in the

23  plea agreement.

24      If he does not accept the plea agreement after he's

25  reviewed the presentence report, you'll be given notice of that

12

1   and you will be allowed to withdraw your guilty plea.  But, if

2   you do not withdraw your guilty plea under those circumstances,

3   then Judge Graham could impose a sentence that is more severe

4   than the sentence that you and the government agreed to in the

5   plea agreement up to the statutory maximum sentence.

6        And that statutory maximum sentence for conviction on

7   Count 2 is a term of imprisonment of up to five years.  And any

8   term of imprisonment could be followed by a term of supervised

9   release of up to three years.  The statute authorizes a maximum

10  fine of up to $250,000, requires the payment of a one hundred

11  dollar special assessment, and also requires an order of

12  restitution by which the -- any victim or victims of an offense

13  are paid in order to compensate them for any loss or damage

14  suffered by the victim or victims as a result of the offense.

15       So, as I say -- and I'm going to repeat this several

16  times probably, and that is that if Judge Graham accepts your

17  guilty plea pursuant to this plea agreement, he will impose a

18  sentence that is consistent with what you and the government

19  have agreed to in the plea agreement.  But, if he rejects the

20  plea agreement and you decide not to withdraw your guilty plea

21  under those circumstances, he could impose a sentence that is

22  more severe than the one that you agreed to in the plea

23  agreement up to that statutory maximum.

24       Do you understand that?

25          THE DEFENDANT:  Yes.

1        THE COURT:  Okay.  Now, let's talk a little bit about

2   possible sentencing terms in this case.  Do you understand that

3   this offense is a felony offense, and that if your guilty plea

4   is accepted, this could deprive you of valuable civil rights as

5   a citizen of the United States such as the right to vote, the

6   right to hold public office, the right to serve on a jury, and

7   the right to possess a firearm.  Do you understand that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  I told you that a term of imprisonment

10  could be followed by a term of supervised release of up to

11  three years in this case.  Now, supervised release is a period

12  of supervision by the probation office on terms and conditions

13  established by the Court.  It begins after the completion of

14  any term of imprisonment.  And a violation of terms of

15  supervised release could result in a new, additional period of

16  imprisonment for up to the full term of supervised release and

17  without credit for time already served in prison or on

18  supervised release.

19       Moreover, if supervised release is revoked and a new

20  term of imprisonment is imposed, that new term of imprisonment

21  could also be followed by yet a new term of supervised release.

22       Do you understand that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Now, in determining whether or not to

25  accept this plea agreement and determining what an appropriate

14

1    sentence would be in a case, Judge Graham will be considering

2    the sentencing guidelines.  Now, those are intended to help a

3    federal judge in determining an appropriate sentence in a case.

4    And although the sentencing guidelines are not binding on a

5    federal judge, federal judges, including Judge Graham, must

6    consider those guidelines, as well as departures or variances

7    from those guidelines, as among the many factors that judges

8    must consider in determining an appropriate sentence in a case.

9          Now, have you and Mr. Durkin talked about how the

10   sentencing commission guidelines might apply to your case?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Do you understand that Judge Graham will

13   not be able to determine what guideline applies to your case

14   until after the presentence report has been completed and after

15   you and the government have had the opportunity to object to

16   the findings and conclusions of the probation officer in the

17   presentence report?  Do you understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Now, I know that in the plea agreement you

20   and the government have agreed to certain facts relevant to the

21   application of the guidelines.  But do you understand that

22   Judge Graham is not bound by those facts?  Instead, he will

23   determine for himself, with the aid of the presentence report,

24   what facts are relevant to the application of the guidelines

25   and, in this case, to whether or not he accepts this plea

15

1    agreement and to your sentence.  Do you understand that?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Again, I want to emphasize that if, after

4    he's reviewed the presentence report, he decides to accept the

5    plea agreement and the sentencing terms that you've agreed to

6    with the government in the plea agreement, he will impose a

7    sentence that is consistent with what you've agreed to.

8         But if after reviewing the presentence report, he

9    rejects the plea agreement, you'll be allowed to withdraw your

10   guilty plea.  But if you decide not to withdraw your guilty

11   plea under those circumstances, he could impose a sentence that

12   is more severe than the sentence you agreed to in the plea

13   agreement up to the statutory maximum but after having

14   considered the sentencing guidelines as well as other factors.

15   Okay?

16        THE DEFENDANT:  Yes.

17        THE COURT:  You understand that?

18        Okay.  Now, moreover, if Judge Graham accepts your

19   guilty plea pursuant to this plea agreement, it also means that

20   you will have given up your right to appeal from or to

21   collaterally challenge your conviction and sentence under

22   almost all circumstances.  This plea agreement would permit an

23   appeal from or a challenge to your conviction and sentence only

24   if the sentence that Judge Graham imposes is greater than that

25   statutory maximum sentence I told you about.

1        Now, you always retain the right to appeal from or to

2   challenge your conviction and sentence if the claim you want to

3   pursue is a claim of ineffective assistance of your attorney or

4   misconduct on the part of the prosecutor.

5        But apart from those very limited claims, this plea

6   agreement does not permit an appeal or a challenge to your

7   conviction and sentence.

8        Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Okay.  Now, under the Constitution and

11  laws of the United States, you have the right to persist in

12  your plea of not guilty to each of these six counts in the

13  indictment.  You have the right to be tried by a jury.  And at

14  a speedy and public trial, you would have the right to the

15  assistance of counsel.  You would have the right to present a

16  defense and to present evidence in support of that defense if

17  you choose to do so.

18       You would have the right to confront and cross-examine

19  the witnesses who testify against you.  You would have the

20  right to require the attendance of witnesses to testify for

21  you.  You would have the right to testify yourself in your own

22  defense if you choose to do so.  You would also have the right

23  to remain silent at trial without any penalty whatsoever.  And

24  at a trial, you would be presumed innocent unless and until the

25  government establishes your guilt by admissible evidence beyond

17

1   a reasonable doubt.

2       Now, do you understand that if you plead guilty you give

3   up all of those trial rights?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you understand that if you plead

6   guilty, there will be no trial of any kind in your case

7   because, by pleading guilty, you are giving up your right to

8   trial?  Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that if you plead

11  guilty, you will also have to give up your right not to

12  incriminate yourself because you will have to admit your guilt

13  to Count 2 of the indictment?  Do you understand that,

14  Mr. Foster?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you willing to give up all of these

17  trial rights that I just mentioned to you?

18          THE DEFENDANT:  Yes, Judge.

19          THE COURT:  Now, we've talked a little bit about the

20  plea agreement in this case.  Plea agreements are perfectly

21  proper, but you and the attorneys in this case must disclose

22  all of the terms of the plea agreement.

23      Mr. Landry, can I ask you to summarize those terms?

24          MR. LANDRY:  Yes, Your Honor.

25          The plea agreement is docketed as Document No. 19 in the

1   ECF system.  It's an agreement pursuant to Rule 11(c)(1)(C).

2   Paragraph 1, the defendant agrees to plead guilty to Count 2 of

3   the indictment pending against him and admits that he is in

4   fact guilty of that offense.

5         Paragraph 2 lists the elements of the offense which the

6   Court reviewed a few minutes ago with the defendant.

7         Paragraph 3 lists the maximum penalties which the Court

8   also reviewed just a few minutes ago with the defendant.

9         In paragraph 4, the defendant acknowledges and waives

10  his trial rights which the Court also reviewed just a moment

11  ago in some detail.

12        In paragraph 5, the defendant waives his right to remain

13  silent and acknowledges that his statements can be used against

14  him.

15        In paragraph 6, the defendant acknowledges that the

16  Court must consult the federal sentencing guidelines and

17  statutory factors when determining a sentence.

18        In paragraph 7, the parties agree to the statement of

19  facts that is attached to the plea agreement.  They also agree

20  on a guideline calculation which is simply a base offense level

21  of 6, plus 10 levels worth of enhancements for a total of 16.

22  And then the U.S. Attorney's Office does not oppose a two-level

23  reduction for acceptance of responsibility, and there's the

24  potential for even a third level to be reduced for acceptance

25  of responsibility as well.  The parties agree that the

1   defendant's criminal history category is 6.

2          Also in paragraph 7, Your Honor, the parties agree on a

3   sentencing disposition which I know the Court reviewed in some

4   detail just a few minutes ago, but probably the most

5   significant portion of which is a prison term of 33 to 41

6   months.

7          In paragraph 8, the defendant agrees to pay restitution

8   in an amount to be determined at sentencing but not to exceed

9   $34,204.

10          In paragraph 9, the United States Attorney's Office

11   agrees it will not further prosecute the defendant for conduct

12   prior to the date of the plea agreement that was part of the

13   same course of criminal conduct described in the indictment and

14   that was known to the U.S. Attorney's Office when the plea

15   agreement was signed.  The U.S. Attorney's Office also agrees

16   to the dismissal of any remaining counts of the indictment

17   against the defendant at the entry of final judgment.

18          Paragraph 10 is the waiver of appeal which the Court

19   just reviewed in detail with the defendant a moment ago.

20          In paragraph 11, the defendant waives his rights under

21   the Freedom of Information Act.

22          In paragraph 12, the defendant acknowledges that the

23   Court may accept or reject this plea agreement, or defer a

24   decision until the Court has reviewed the Presentence

25   Investigation Report.

1      Paragraph 13, the defendant -- excuse me.  In paragraph

2   13, there are certain consequences listed in the event the

3   defendant should violate the plea agreement.

4      Paragraph 14, the defendant acknowledges that he has

5   read and that he understands the plea agreement.  He's entering

6   into it knowingly and voluntarily, and he's fully satisfied

7   with his attorney's representation.

8      Paragraph No. 15 is the final numbered paragraph of the

9   agreement, and it states that this agreement, along with any

10  attachments, is the complete agreement between the parties.

11     The document is then signed by myself on behalf of the

12  United States and Mr. Foster and by Mr. Durkin.

13     THE COURT:  Mr. Durkin, is that your understanding of

14  the plea agreement in this case?

15     MR. DURKIN:  It is, Your Honor.

16     THE COURT:  And have all formal plea offers been

17  communicated to Mr. Foster?

18     MR. DURKIN:  They have.

19     THE COURT:  Mr. Foster, did you understand that

20  summary of the plea agreement provided by the attorney for the

21  United States?

22     THE DEFENDANT:  Yes.

23     THE COURT:  And I know you probably don't have a copy

24  of the plea agreement in front of you, but I have a copy and it

25  appears to have been signed.  Do you remember signing the plea

21

1    agreement?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Before you signed it, had you read the

4    entire plea agreement?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Had you discussed it with Mr. Durkin

7    before you signed it?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And did you understand all of the terms of

10   the plea agreement before you signed it?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And do you agree with all of those terms?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Has anyone made any other or different

15   promises or assurances of any kind to persuade you to plead

16   guilty in this case?

17           THE DEFENDANT:  No.

18           THE COURT:  Have you been subjected to threats or

19   force of any kind that persuade you to plead guilty?

20           THE DEFENDANT:  No, Your Honor.

21           THE COURT:  Is your decision to plead guilty to Count

22   2 your own free and voluntary act?

23           THE DEFENDANT:  Yes.

24           THE COURT:  All right.  Well, decision on whether or

25   not to accept the plea agreement is of course left for Judge

22

1    Graham's consideration.

2         But now Judge Graham is also going to have to determine

3    that there is a factual basis for your plea of guilty to Count

4    2.  And there is a statement of facts attached to the plea

5    agreement.  Again, it appears to have been signed.  Do you

6    remember signing that statement of facts?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Before you signed it, had you read the

9    statement of facts?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Had you discussed it with Mr. Durkin

12   before you signed it?

13        THE DEFENDANT:  Yes.

14        THE COURT:  And before you signed it, did you

15   understand all of that statement of facts?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Do you agree with that statement of facts?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Is it correct?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Are you offering to plead guilty to Count

22   2 because you are in fact guilty of the crime charged in Count

23   2 of the indictment?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  All right.  Then, in light of everything

23

1    I've told you about your rights, Mr. Foster, and in light of

2    all of my questions, let me ask you:  How do you now plead to

3    Count 2 of the indictment?

4              THE DEFENDANT:  Guilty.

5              THE COURT:  All right.  Your guilty plea has been

6    recorded.  I've had a chance to evaluate your appearance and

7    responsiveness in response to my questions.  And based on my

8    observation and your answers to my questions, I will recommend

9    to Judge Graham that your guilty plea be accepted.

10             I expect to make that recommendation today.  The parties

11   will have 14 days to object, and their failure to object may

12   result in a waiver of the right to appeal the adoption of the

13   recommendation by Judge Graham.

14             Now, Mr. Durkin, is there any objection to beginning the

15   preparation of the presentence report in advance of Judge

16   Graham's action on the recommendation?

17             MR. DURKIN:  No, Your Honor.  I've already talked with

18   probation, and we'll schedule a -- probably we'll have a

19   presentence interview next week.  And I expect Mr. Foster and I

20   will talk about this case on the telephone before that video

21   interview with the probation department.

22             THE COURT:  I think you cut out just a little bit

23   there in that statement, Mr. Durkin.  You expect to have an

24   interview?

25             MR. DURKIN:  I think we will probably have it Tuesday

24

1   of next week.  And I expect I'll talk to Mr. Foster before then

2   by telephone so that we're prepared for that interview.

3           THE COURT:  Okay.  Thank you.

4           Well, Mr. Foster during that process, you're going to be

5   asked to provide information relevant to the presentence

6   report.  And Mr. Durkin can assist you throughout that process.

7   You'll have an opportunity, in consultation with Mr. Durkin, to

8   review the presentence report and to object to any of the

9   findings or conclusions with which you disagree.  And if

10  there's still some unresolved objections at the time of

11  sentencing, you'll have the right through Mr. Durkin to present

12  evidence or arguments addressing those unresolved objections.

13          Now, the defendant was previously ordered detained in

14  the custody of the marshal pending these proceedings, and he

15  does remain in custody.

16          Mr. Landry, is there anything further on behalf of the

17  United States?

18          MR. LANDRY:  No.  Thank you, Your Honor.

19          THE COURT:  Mr. Durkin, anything further on behalf of

20  Mr. Foster?

21          MR. DURKIN:  No.  Just again thank the Court for its

22  patience.

23          THE COURT:  Well, with that, then, I'll ask the clerk

24  to adjourn the court, please.

25          (Proceedings concluded at 4:13 p.m.)

25

1                              – – –

10                    C E R T I F I C A T E

12        I, Shawna J. Evans, do hereby certify that the

13   foregoing is a true and correct transcript of the proceedings

14   before the Honorable Norah McCann King, Magistrate Judge, in

15   the United States District Court, Southern District of Ohio,

16   Eastern Division, on the date indicated, reported by me in

17   shorthand and transcribed by me or under my supervision.

20                              s/Shawna J. Evans_____
                               Shawna J. Evans, RMR, CRR
21                             Official Federal Court Reporter

23                             September 9, 2021